The next case called Floral Argument is People v. Leverett Lawrence O'Neill The judge sentenced Leverett to the maximum extended term 10 years sentence. The court denied his motion to reduce sentence. Leverett appealed, and this court remanded the case because trial counsel failed to file a 604-d sentence. Another motion to reduce sentence was filed, and a hearing was held, and that motion to reduce was denied. This appeal stems from that sentence. Leverett contends that the maximum extended term sentence is excessive in abuse of the trial court's discretion, and the trial court improperly relied on two factors in aggravation of sentence to justify a maximum extended term sentence. Mr. Leverett asked Your Honors to reduce his sentence or, alternatively, to remand the case for resentencing. Briefly, evidence presented at the guilty plea and sentencing hearings indicates that Leverett was driving his vehicle perhaps as much as 18 miles over the 45 mile-an-hour speed limit during the afternoon of July 2006 when he looked down to pick up his cell phone that had dropped. Leverett then crashed into the motorcycle that had stopped to make a right-hand turn, killing the driver and the passenger. The first reason that Mr. Leverett's sentence should be reduced is that it pertains to his life history and his record, his potential for rehabilitation, and the conduct related to the particular circumstances of the offense, which the trial court did not sufficiently or adequately consider. The second reason involves the trial court's errors at sentencing, namely, finding an aggravation of sentence to Leverett of prior criminal history, and that when the record does not support that and the judge improperly considered an aggravation, that the crime caused serious harm to the victims and which serious harm is inherent in the offense of reckless homicide. Considering the constitutionally mandated objective of rehabilitation and the restoration of the offender to useful citizenship, the sentencing judge abused discretion by opposing the maximum sentence because Leverett is not a harm and callous criminal, the type of offender who merits an excessive sentence. First, he was young, age 20 at the time of the crash and 21 at the time of sentencing, young enough to be restored to useful citizenship. Second, he had a very minor criminal record. His previous criminal record consisted only of a misdemeanor conviction in Kentucky in October 2005, for unlawful possession of marijuana, in which he was sentenced to two years of court supervision. Moreover, Leverett graduated from high school, Harrisburg High School, in 2004, and he attended Southeast Illinois College to be trained as a welder and expressed his desire to continue his training and become a professional welder. Thus, Leverett's youth, minimum criminal record, and education and vocation training bode well for his rehabilitation. The trial court failed to consider Leverett's life history and potential rehabilitation potential in opposing the maximum extended prison sentence. He is not a harm and criminal, and the trial court's failure to adequately consider Leverett's potential for rehabilitation was an abuse of discretion. This court, therefore, should reduce Leverett's maximum extended term sentence or, alternatively, remand the case for resentencing. Moreover, the sentencing judge based the maximum sentence on two improper factors and aggravation. First, at the initial sentencing hearing, the judge noted aggravation of sentence that Leverett had a prior history of delinquency and criminal activity and has not led a law-abiding life for a substantial period of time before the commission of the pending charge. However, Leverett's pending criminal record did not provide a basis for a finding of aggravation of sentence, as he had only one prior misdemeanor conviction in 2005 for possession of cannabis, which received two years' court supervision. He had no prior felony conviction, no prior crimes of violence, and no previous sentence to the Department of Correction. The trial court erred by considering Leverett's prior criminal record as an aggravating factor because the finding is not supported by the record. In fact, Leverett's lack of criminal record should have been considered as a factor of mitigation of sentence. Leverett's criminal record did not provide a basis for a maximum extended term sentence. In addition, as raised in the supplemental brief, the judge committed plain error by stating in sentencing that the short court shall consider various factors in aggravation, among those factors that the defendant's conduct caused or threatened serious harm. The judge then went on specifically to find that the defendant's criminal conduct did cause serious physical harm to another. The judge improperly considered the physical harm to the victims as a factor in aggravation of sentence because serious injury to the victims is inherent in every reckless homicide. Thus, because the legislature had already considered these factors that are inherent in the offense when it determined the sentencing range for reckless homicide, it was plain error for the judge to again consider that factor in aggravation of sentence. It would have been proper for the trial court to consider the degree of harm caused to the victims as a result of the defendant's conduct, but the fact that the defendant caused serious harm cannot be used as a factor in aggravation of sentence because, again, serious injury is implicit in every reckless homicide. And so when the record clearly indicates that the judge improperly considered the factor in aggravation of sentence, as in the present case, the appellate court may reduce defendant's sentence. Mr. Lever received an extended 10-year sentence, and he asks this court to reduce his sentence pursuant to his powers of Supreme Court Rule 615 or the alternative to remand the case for resentencing. Are there any questions, Your Honors? I don't believe there are. Thank you very much. Thank you, counsel. Counsel? May it please the court. First of all, this defendant didn't really receive a 10-year sentence. He's only going to have to serve four years, and he's going to be out next May. Is that a proper factor for us to consider? Yes. I mean, you can always consider real life. I mean, the fact that in Illinois, sentences except for very serious crimes are cut in half by day-for-day good time is a legitimate factor for the trial court to consider in sentencing. I'm sure you considered it when you were in the trial courts, and therefore it's an appropriate matter to consider on review. I mean, the judge did note in sentencing that the defendant would only have to serve about four years provided he participated in appropriate programs in prison. So this was something that was considered by the trial court. And was that considering the time previously sent while pending? Was he on bail or was he in? Okay. He will serve less than four years in the State Department of Corrections, including time spent in custody before sentencing. He will serve four years and eight days. Okay. Now, the trial judge didn't improperly ignore this defendant's potential for rehabilitation because this defendant didn't have any. We're not restricted at sentencing, and we weren't restricted at sentencing in this case to showing a defendant's criminal activity other than those which resulted in convictions. We introduced uncontradicted evidence that this defendant forced his way into his ex-girlfriend's car and threatened to shoot to death the girlfriend and the man he believed that she was dating. Also, because this defendant had a father who was a Harrisburg police officer, charges against him had a mysterious way of disappearing between arrest and the court system. We introduced uncontradicted evidence that this defendant committed the crime of residential burglary in which a gun was taken. He was arrested for this charge, but instead of being formally charged with it, he checked himself into the Gateway Drug Rehabilitation Program, which would have been a very good thing for him if he had stayed there. But two days later, he checked himself out against staff advice. So he committed a residential burglary, and nothing happened as a result. Am I correct? Was he on probation at the time? Yes. For what? His one conviction was a misdemeanor marijuana case in Kentucky, and he was on probation for that offense at the time. And did he violate his bond? Did he also violate his bond? That is also correct. That's what I'm getting to now. This defendant is a druggie who showed no signs of having his addictions under control. At the time he ran down the motorcycle and killed two people, he had four illegal drugs in his system. Now, he produced an expert witness who said that these drugs were metabolized, but of course they were metabolized because he found them in his urine. By definition, what's in your urine is metabolized, but we don't know what else was in his system, although we do know that he had a hash pipe or a marijuana pipe on the console of his car which smelled of cannabis. The circumstances of the offense suggest that not everything in his system was metabolized. But we have more definite information as to what happened after he was charged with reckless homicide. He was released on bond and picked up a new charge. Because it was pending, we didn't use that charge in sentencing as an aggravating factor. But we did use evidence that he was both driving a car and consuming alcohol on the night he was arrested in direct violation of his bail bond. Indeed, we introduced hospital records which show that eight days after being released on bond, he checked into a hospital and had alcohol in his system in violation of his bail bond. Now, what are you going to do with someone like this? What are you going to do with someone who has drug problems out of control, who checks himself out of rehabilitation after two days, who has a record of criminal activity, and who kills two people? Well, I'd say four years is pretty light under the circumstances. But at any rate, it's not for me to decide. Indeed, it's not even directly for this court to decide. It's a matter for the trial judge's discretion in sentencing. And on this record, the trial judge could certainly decide that this is a person with a record of criminal activity, with uncontradicted evidence showing that he had a serious substance abuse problem, and uncontradicted evidence show that even after being arrested and even after being released on bond, he was unable to comply with the court's orders and unable to stay away from substance abuse. Again, I hope he's going to learn something in four years in prison, but the people he killed are going to be dead a lot longer than that. Now, as for the supposed improper aggravating factors, criminal records have already gone over that. It's true that there was only one previous misdemeanor conviction, although he was on probation when he committed the new offense. There was, as I say, uncontradicted evidence of other criminal activity which did not result in convictions. Now, as the other supposed improper factor is that the judge mentioned that the crime caused serious bodily harm. Well, I haven't filed a supplemental brief in response because I got hit with an expedited child custody case with a 2,000-page record, but it's due later this week and I am going to file it later this week. But this is one of these tricky little lawyer arguments that have no correspondence to what happened in real life. Now, whatever you think of Judge Morris, he wasn't retarded with an IQ somewhere in the 60s, so he must have realized that reckless homicide involves a homicide. I mean, you know it, I know it, the judge knew it. The fact that he mentioned that this case caused serious bodily harm does not mean that he was unaware that a reckless homicide involves a homicide and that it's part of the offense. There's nothing in the record which shows that the sentence imposed on the defendant was enhanced by the fact that the reckless homicide involves a homicide. Now, however, you could enhance it because this case involved more than just serious bodily harm. This involved two dead bodies, and it didn't involve just serious bodily harm. It involved two dead bodies which were smashed and killed. So, as I'm going through cases I'm going to cite in my supplemental brief, we're going to show that when an aggravating factor is inherently offense, but nevertheless the crime involved an extreme example of that aggravating factor, then the court can consider it. I mean, for example, every criminal sexual assault involves sexual penetration, at least most of them do, but there are various kinds of sexual penetrations on which are more harmful than others. Similarly, here, you had great bodily harm, which is about the worst you possibly can get. You had two people making an ordinary turn on a motorcycle who had run down from behind. One died at the scene, or at least was pronounced dead at the hospital. The other died in the hospital. Their bodies were broken up. They both were dead. They left two orphaned children. That's serious bodily harm a lot more than what's inherent in any offense. So, for that reason, I hope you'll wait for my supplemental brief for what it's worth, and I'll pull the sentence and close down this defendant. Thank you, counsel. Counsel? Your Honor, while it may be proper for the state to present evidence regarding the defendant's other criminal, possible criminal activity or bad acts at a sentencing hearing, it must be reliable and credible for the judge to consider. And the instances that the state presented at the sentencing hearing failed to establish the reliable and credible nature of those alleged criminal acts. First, counsel mentioned that the defendant was alleged to have threatened his girlfriend, and I believe counsel refers to it as an aggravated assault, perhaps, in his brief. That was introduced by the authenticated copy of an order of protection at the sentencing hearing, and the exhibit contained the affidavit of Leverett's girlfriend's mother's statement about what the defendant allegedly said to her daughter and did to her daughter. So this is a double hearsay presentation of evidence against the defendant. It's totally improper for the court to consider that conduct as a prior criminal activity or that the defendant had not led a law-abiding life for a period of time prior to the offense. Did you mention in your – I didn't write it down. Did you mention he was on bail at the time of the accident? He was on – at the time of the accident, he was on court supervision. Oh, not on bail? At the time of the accident, Your Honor, no, sir. No, Your Honor. He was convicted of misdemeanor possession of cannabis in 2005 in Kentucky. He received two years court supervision, and the accident, I believe, was in July of 2006. So he was on that – he was on court supervision at the time of this accident. Was that ever revoked? I do not believe the record reflects that, Your Honor. The residential burglary that counsel mentions, the defendant, Mr. Weber, was arrested at the house. Coincidentally, his father was one of the officers who was called to investigate the residential burglary, and he was never charged. Now, counsel suggests that it was because his father was a police officer that he was never charged. But I submit to this court that the record is more ambiguous about that. There's simply no explanation why he wasn't charged with that offense. There was the testimony at the sentencing hearing by the owner of the house who testified that his son was good friends with Leverett, Mr. Leverett, and that the owner of the house, James Sellers, was good friends with the Leverett family. And so the record just reflects that the defendant and Mr. Leverett and another guy were in the house, and the police were called, and the defendant was arrested. No charges were filed, and there's no explanation as to – it could have been that perhaps it's just a reasonable explanation that the defendant thought that he had permission to enter the house. Was this a roundhouse, or who lived there? A man named James Sellers who was a friend. He had a family, and his son was Mr. Leverett's age, and they were friends. And the record reflects that the Sellers family and the Leverett family were friends. They were friendly. So it wasn't the case of breaking into somebody's house and stealing something as much as it was that the Leveretts and the Sellers were friends. You can read the record yourself, but it certainly is not a typical residential burglary case, and he was not charged with the offense. So that's the second other alleged criminal activity the defendant was involved in. The state says he was on probation. You say he was on supervision. Is that relevant? I mean, the difference, the distinction? I can't see the difference, Your Honor. Well, supervision – my record's reflected as supervision. I don't know. But there was nothing in the record indicating that there was any action taken by Kentucky or anything to revoke that. Does the record have anything about the Kentucky proceedings? I don't believe so, Your Honor. It's mentioned in the PSI, but not in any detail. No certified copy of any Kentucky proceedings? No, Your Honor. Okay. Thank you, counsel. Thank you, Your Honor. We appreciate the briefs and arguments of counsel. We'll take the case under advisement. We'll be in a very short recess.